IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOHNNY NANCE                                                                                  PLAINTIFF

vs.                                                                    CIVIL ACTION NO. 1:16CV69-RP

COMMISSIONER OF SOCIAL SECURITY                                                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Johnny Nance, under 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security denying his application for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff protectively filed an application for benefits on December 16, 2011, alleging disability beginning on April 1, 2011. His claim was denied initially on March 29, 2012, and upon reconsideration on May 22, 2012. He filed a request for hearing and was represented by counsel at the hearing held on January 17, 2014. The Administrative Law Judge (ALJ) issued an unfavorable decision on March 27, 2014, and on February 18, 2016 the Appeals Council denied plaintiff's request for a review. Plaintiff timely filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment. Having considered the record, the briefs and the oral arguments of counsel, the court finds this case should be remanded to the Social Security Administration.

1

# I. FACTS

Plaintiff was born on May 19, 1959 and was 54 years old at the time of the hearing. He has a high school education and has past relevant work as a grave digger and construction worker. Plaintiff contends that he became disabled before his application for benefits due to "nerve damage, right foot condition, skull fracture, . . . [left] foot condition, excessive swelling of leg, depression, anxiety." Docket 13 at 138.

The ALJ determined plaintiff suffered from "severe" impairments including status post gunshot wound to right lower leg/ankle area, insertional tendonitis in the Achilles tendon, and depression, but the ALJ found these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 416.920(d), 416.925 and 416.926). Based upon testimony by the vocational expert [VE] at the hearing and considering the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity (RFC) to

> lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk four hours in an eight-hour workday; and sit up to six hours in an eight-hour workday. The claimant cannot climb or crouch but can occasionally balance, stoop, kneel, and crawl. The claimant cannot work around heights. He can occasionally work around moving machinery and can occasionally drive. He is capable of understanding, remembering, and carrying out simple job tasks and job instructions. He can sustain attention and concentration for two-hour periods in an eight-hour workday. He can occasionally interact with supervisors and co-workers.

Docket 13 at 15. Upon further analysis under applicable rulings and regulations, the ALJ found plaintiff to be less than fully credible in that the intensity, persistence and limiting effects he claimed due to his symptoms were "not entirely credible." After evaluating all of the evidence in the record, including testimony of the VE, the ALJ held that plaintiff could perform jobs that exist in the national economy such as a small products assembler, cashier II and wiper. Docket

13 at 19. As a result, the ALJ concluded that plaintiff is not disabled under the Social Security Act. *Id.*

On appeal, plaintiff contends the ALJ erred in mechanically applying the Medical-Vocational Guidelines.[1] The court agrees and remands the case for further consideration of plaintiff's borderline age at the time of the ALJ's decision.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[3] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[4] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[5] At step three the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[6] If plaintiff

---

[1] In his brief, plaintiff also asserted that the ALJ erred in failing to have a qualified psychologist or psychiatrist review the medical evidence. However, during oral argument, plaintiff conceded that any error was harmless.

[2] *See* 20 C.F.R. § 416.920 (2010).

[3] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[4] 20 C.F.R. § 416.920(b) (2010).

[5] 20 C.F.R. § 416.920(c) (2010).

[6] 20 C.F.R. § 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity."

3

does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[7] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[8] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[9]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[10] even if it finds that the evidence leans against the Commissioner's decision.[11] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such

---

20 C.F.R. § 416.925 (2003).

[7] 20 C.F.R. § 416.920(e) (2010).

[8] 20 C.F.R § 416.920(g) (2010).

[9] *Muse*, 925 F.2d at 789.

[10] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[11] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III.  DISCUSSION

Nance claims the ALJ erred when he mechanically applied the Medical-Vocational guidelines, commonly called the grids, and did not consider plaintiff's borderline age situation. This court addressed such an issue in *Horsley v. Colvin*, Civil Action No. 1:12CV273,-DAS, 2014 WL 1213467 (N.D. Miss. 2014), in which opinion the court set forth the framework for addressing the issue in a manner which the undersigned finds most instructive and as such restates and uses it here.

The guidelines are used when a claimant is found to be unable to return to past relevant work. These rules assist the Social Security Administration with its burden at Step Five to show whether a claimant is capable of significant gainful activity, without the necessity of individualized, expert vocational testimony. Where a claimant's RFC and other vocational factors fall precisely within one of the grids, the rules will dictate either a finding of "disabled" or "not disabled."

The Social Security Administration through its regulations has recognized the adverse vocational impact of advancing age, and the grids reflect this determination. In fact, the age of a claimant may be determinative of the outcome of an application for disability. An older worker may be deemed "disabled" by the grids, where a younger worker, with an otherwise identical vocational profile may be deemed "not disabled." Based on this reality, the Social Security Administration has, by regulation, mandated that the age categories in the guidelines shall not be mechanically applied in borderline situations. 20 C.F.R § 404.1563(a). The regulation provides:

> If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors in your case.

*Id.*

The Hallex, the Social Security Administration, Office of Hearings, Appeals and Litigation Law Manual, § II-5-3-2 is instructive. It provides guidance both in identifying borderline situations and in applying the grids in these cases. The Hallex provides an adjudicator should apply a two-part test for identifying borderline age situations. An adjudicator should determine if the claimant's age is within a few days or a few months of the next highest age category, and if so, should then determine whether using the next higher age category results in a decision of "disabled," instead of "not disabled."

In this case, plaintiff was 54 days short of his 55th birthday on the date of the ALJ's decision. This time period is within the range that is considered borderline. *Cox v. Apfel*, 166 F.3d 346 (6$_{th}$ Cir. 1998)(unpublished decision), *Turner v. Astrue*, 2011 WL 2783832 (S.D. Ohio July 11, 2011).

The defendant concedes that plaintiff also meets the second part of the Hallex test. If plaintiff had been considered in the next highest age group, Medical-Vocational Rule 202.06 would have been applied. Under this rule, because plaintiff is limited to light work, has a high school education, past skilled or semi-skilled work experience, but no transferable skills, he would have been deemed disabled.

Finally, plaintiff acknowledges that merely showing he was within a few months of achieving "advanced age," does not automatically move him into the "advanced" category. Rather, the Social Security Administration has considerable discretion as to whether it should advance a claimant to the next age group or decide his case based on his chronological age. In other words, while the Administration may not mechanically apply the age categories to the detriment of an individual, an applicant is likewise not entitled to a mechanically favorable application of the age groupings.

Instead, the Hallex requires that when the Administration looks to decide whether it should apply the higher age category or the chronological age, the adjudicator shall look to see if there are "additional vocational adversities." Hallex, § II-5-3-2. Additional vocational adversities require "the presence of an additional impairment(s) which infringes upon– without substantially narrowing– a claimant's remaining vocational base." *Id.* The Hallex lists the following as examples of additional vocational adversities: being barely literate in English; having limited ability to communicate in English; and having a work history limited to unskilled work in an "isolated industry or work setting." The Hallex suggests treating additional adversities as a prerequisite to applying the next higher age category.

Plaintiff notes multiple additional vocational adversities included in the ALJ's RFC,

7

specifically a limitation to performance of only simple tasks that only occasionally require driving, only occasional postural maneuvers, and no exposure to heights or other workplace dangers. However, the finding of such adversities does not mandate using the higher age range. Rather the Hallex provides for a sliding scale approach. The more closely the claimant's chronological age to the next higher age category, the less additional vocational adversity is needed to trigger use of the higher age. As the difference between the chronological age and the next age category increases, increasing additional vocational adversity must be shown or the chronological age will be applied.

Plaintiff argues that the decision shows a mechanical application of the medical vocational guidelines as the ALJ did not discuss or even acknowledge the borderline age situation. *Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 780 (6th Cir. 1987); *Rikard v. Astrue,* 2009 WL 736210 (N.D. Miss. March 18, 2009). The Commissioner argues that the ALJ's decision to decline to apply the next higher-aged grid rules is supported by the record, as the ALJ did not rely solely on the grid rules but instead took and considered the VE's testimony regarding whether a person with plaintiff's age, education, RFC and prior relevant work could perform other jobs in the national economy.

The ALJ found that plaintiff had the residual functional capacity to perform a less than full range of light work. Docket 13 at 19. The ALJ's decision, in pertinent part found: "The claimant was born on May 19, 1959 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 C.F.R. 416.963)." *Id.* at 18. After considering his age, education and work experience, the ALJ found that based upon plaintiff's RFC for the less than full range of light work, he would be deemed not disabled

8

under Medical-Vocational Rule 202.14.

The court is aware of authority that ALJs need not always specifically detail their consideration and rationale for a borderline age determination, *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008), and that there is also authority to the contrary. *Pickett v. Astrue*, 895 F. Supp.2d 720, 725(6th Cir. 2008) (noting that the Eighth, Tenth and Third Circuits require explicit explanation of a borderline age analysis and that the Sixth, Ninth and Eleventh Circuits have rejected this requirement). While the court is typically reluctant to issue any ruling that might increase the burdens borne by the ALJs in issuing hearing decisions, in this case the court finds that the ALJ's decision does not demonstrate that the ALJ recognized the case as a borderline age case. There may be substantial evidence to support the use of the plaintiff's chronological age, but there is no indication the ALJ recognized the issue or made any decision as to that issue. The decision does not show that the ALJ exercised his discretion to decline to move the plaintiff into the advanced age category. If the borderline determination was omitted, as appears to be the case here, the grids have necessarily been applied to plaintiff in a mechanical manner and, therefore, in violation of the regulation.

The only clear indication in the decision that the ALJ considered plaintiff's age at all is the statement that "claimant was born on May 19, 1959 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed." Docket 13 at 18. While that is appropriate for the purpose of assessing his disability, *vel non*, at the age of fifty-two, it was not the only age the ALJ was required to consider. Adjudicators are required to use "the age categories that apply to you during the period for which we must determine if you are disabled." 20 C.F.R. § 404.1563 (b). While Plaintiff's chronological age

9

remained in the "closely approaching advanced age" category through the date of the ALJ's decision, he aged from the mid-point of "approaching advanced age" into the "borderline range" during the pendency of his application. This regulation therefore requires consideration of the plaintiff's age at the later date as well.

Furthermore, case law dictates that the age to be applied in making a grid determination is the age at the time of the decision– not at the alleged date for onset of disability or the date of application. *Walhood v. Sec. of Health & Human Services,* 875 F. Supp. 1278 (E.D. Tex. 1995). The relevant inquiry is whether the claimant has the ability to engage in substantial gainful activity. The fact that the claimant is unable to engage in substantial gainful activity at the time of the decision, but may have been able to do so in the past, goes to the question of the onset date, not the question of disability. *Rikard,* 2009 WL 735210 at *3 (citing *Varley,* 820 F.2d at 780). Because plaintiff has "other vocational adversities" that might warrant placement in the advanced age category, the error cannot be said to be harmless. At a minimum, the ALJ has failed to provide sufficient information to allow meaningful review of the decision. 42 U.S.C. § 405 (g). In this case, there is an "evidentiary chasm" regarding whether, or how, the ALJ may have considered plaintiff's borderline age. This court finds this "chasm should not be bridged in the name of expediency." *Walhood*, 875 F. Supp. at 1284.

The court also rejects the Commissioner's argument that the testimony of the vocational expert can save the decision. Vocational experts are tasked with determining if there are jobs available within the national economy that can be performed within a claimant's assigned RFC. This testimony does not consider the vocational impact of advancing age. The Medical-Vocational guidelines, to the contrary, incorporate this age factor. Thus, if Nance is considered

as being of advanced age, he has reached the point where Social Security regulations recognize that "age significantly affects a person's ability to do substantial gainful activity." 20 C.F.R. § 404.1563. This determination dictated by the Medical-Vocational rules is conclusive. 20 C.F.R. § 404.1569.

Because the ALJ did not acknowledge or discuss plaintiff's borderline age situation and instead applied the Medical-Vocational Rules mechanically, his decision was not supported by substantial evidence. This case is remanded for consideration of plaintiff's borderline age, including the rationale for the decision.

## IV. CONCLUSION

The Commissioner's denial of benefits will be reversed and the case remanded for additional review in accordance with this opinion. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 14th day of February, 2017.

/s/ Roy Percy<br>
UNITED STATES MAGISTRATE JUDGE